## PRAZNIK v. WESTERN UNION TELEGRAPH CO.

### Civ. A. No. 245.

District Court, D. Massachusetts.

May 9, 1941.

Henry Lawlor, of Boston, Mass., and Samuel P. Coffman, of Quincy, Mass., for plaintiff.

Arthur P. Hardy (of Hardy, Hall & Iddings), of Boston, Mass., for defendant.

SWEENEY, District Judge.

In this action the plaintiff seeks to recover on account of the alleged negligence of the defendant in failing to deliver within a reasonable time a night letter sent from Quincy, Massachusetts, to Oakland, Maine. The defendant denies negligence and raises several other defenses which will appear herein later in so far as they are important.

### Findings of Fact.

On August 20, 1938, the plaintiff's wife went to Oakland, Maine, for a vacation, staying at the Bacon farm which is outside of Oakland. On August 24th, she was taken to a nearby hospital where she remained until Tuesday, August 30th. During this time her husband visited her at the hospital the week-end of August 27th. After she was released from the hospital she returned to the farm for the remainder of her vacation. On Friday night, September 2, 1938, the plaintiff sent the following night letter to his wife: "Will arrive either Saturday night or Sunday morning." This message was received at the defendant's office in Waterville, Maine, sometime before 7 A.M. (all references herein are to Standard Time) on September 3d. The operator was unable to phone the message to the Oakland agent until sometime between 7 and 8 A.M. When this agent received the message he wrote it out on a Western Union blank, and since it was too late to mail it so that it would go out on the first mail delivery which left at 7:15 A.M., he delivered the written message to one Benson who lived in the vicinity of the Bacon farm. Had the message been received by the Oakland agent in time to put it in the first morning mail, the carrier would have delivered the message at the Bacon farm about 9:15 A.M. Benson received the message about 10.30 A.M., and delivered it to Agnes Bacon at about 11:30 A.M. Just what happened to the telegram between its receipt at the Bacon farm at 11:30 A.M. and its delivery to Mrs. Praznik at about 2 P.M. is unknown, but the plaintiff's wife did not receive the message until about 2 P.M. At 2:18 P.M. she sent the following telegram to her husband in Quincy: "Arrive 8:38 P.M. Boston Sunday. Am feeling fine. Not necessary to come here." The state of the evidence leaves me in

600

doubt whether the husband received this message before starting for Oakland, but I assume he did not since he arrived at Oakland late in the afternoon of the 3d.

Unfortunately, the plaintiff did not appear to testify at the trial, nor was his deposition taken, but from the other witnesses, and from the state of the pleadings, the injury which is the basis of his claim seems to consist mainly of the plaintiff's allegedly unnecessary trip to Oakland on September 3d. His complaint appears to be that if his night letter to his wife was delivered seasonably she in turn would have telegraphed him that it was unnecessary for him to come to Oakland in such time that her message would have been delivered to him in Quincy before he left that city, and that the company's failure to seasonably deliver his night letter of September 2d naturally resulted in the damages which he claims. These damages consist of the cost of his transportation by automobile to Oakland and return, and certain medical expenses that were incurred by reason of his son being taken sick on the trip.

It was stipulated that the expenses which the plaintiff incurred exceeded $500, and it was further agreed that the recovery, if any, would be limited to the sum of $500 in accordance with the terms of an unrepeated message.

### Discussion

The evidence submitted on behalf of the plaintiff is insufficient to support this action. There is no evidence from which I could find that had the plaintiff received his wife's message before leaving Quincy that he would not have gone to Oakland. Her message to him was not at all directory. She merely pointed out that it was not necessary for him to go to Oakland. But if such a finding could be made there was no evidence of the time of his departure from Quincy so that the court could determine whether under the most favorable circumstances he would have received his wife's message before his departure. There was no evidence that the son's illness (which was certified by a physician as consisting of "a 'cold' with a profuse nasal discharge, abscessed left ear with left mastoiditis when I first saw him Sept. 28, 1938") had any relation to the trip which the boy allegedly took with his father on September 3d. The certificate of the doctor contained this statement: "Mastoiditis usually is brought on by a 'cold', or the grippe, or Influenza, or pneumonia, measles, Scarlet Fever or any respiratory disease." Beyond the certificate of the doctor, there was no medical evidence that in any way tended to connect the boy's condition of September 28th with the alleged unnecessary trip of September 3d. There was no evidence that would show the condition of the boy immediately before and after the alleged unnecessary trip.

Another barrier to the plaintiff's right to recovery is the lack of proof that he made a written claim sixty days after September 2, 1938, as provided by the terms of the contract.

On all the evidence I cannot find that the defendant was guilty of any negligence in handling the plaintiff's night letter. It did what it contracted to do.

### Conclusions of Law

I find and rule that the plaintiff has not sustained the burden of proving negligence on the part of the defendant. Judgment is to be entered for the defendant.